UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KEITH ALLPORT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:19CV1396 HEA |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of the final decision of the Commissioner of Social Security denying the application of plaintiff for disability insurance benefits under Title II, 42 U.S.C. §§ 401, *et seq*. and denial of supplemental security income benefits under Title XVI, 42 U.S.C. §§ 1381, *et seq*. The Court has reviewed the filings and the administrative record as a whole which includes the hearing transcript and medical evidence. The decision of the Commissioner will be affirmed.

**Background**

Plaintiff protectively filed for Disability Insurance Benefits and Supplemental Security Income on November 30, 2015, alleging disability beginning October 14, 2014. He received an initial denial on February 24, 2016,

and a denial upon reconsideration on September 7, 2016. Plaintiff filed a timely Request for Hearing on October 14, 2016. He attended a hearing before ALJ Joseph L. Heimann on April 3, 2018.  The ALJ rendered an unfavorable decision dated October 3, 2018. In the decision, the ALJ found Plaintiff had the severe impairments of degenerative disc disease of the cervical spine with radiculopathy; status post cervical fusion; and degenerative disc disease of the lumbar spine. While the ALJ found none of Plaintiff's impairments met or equaled a listed impairment, he did find some limitations. Specifically, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform:

> sedentary work…except the claimant can never climb ladders, ropes, and scaffolds. The claimant can perform all other postural activities occasionally with no limitation on balance. The claimant can frequently handle and finger, bilaterally.

Based on vocational expert testimony, the ALJ found Plaintiff was unable to perform any of his past relevant work but could perform other work such as assembler, hand packer, and inspector/sorter.

Plaintiff filed a timely Request for Review of Hearing Decision on November 15, 2018. The Appeals Council, on May 11, 2019, denied the request. Plaintiff has exhausted all administrative remedies. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## Record Evidence

The following relevant evidence appears in the record:

On May 4, 2015, Plaintiff reported to Boston Mountain Rural Health Center for a check-up of pinched nerve in back with Bobbi Robbins, APRN. X-ray of the lumbar spine taken on May 6, 2015, revealed advanced degenerative changes at L4-L5.

On November 19, 2015, Plaintiff presented to Duncan Regional Hospital emergency department for thoracic and lumbar back pain. An x-ray of the lumbar spine revealed narrowing of the intravertebral disc space and osteophytic formation at L4-5 and narrowing of the intervertebral disc space at L5-S1. On November 29, 2015, Plaintiff presented to Duncan Regional Hospital for neck and back pain, and was diagnosed with back pain and low back strain, and exhibited tenderness.

On March 1, 2016, Plaintiff reported to Ironton Medical Center to establish primary care with Joseph Camire, D.O. Plaintiff reported severe low back pain and exhibited tenderness on palpation in the lumbosacral spine. Plaintiff saw Dr. Camire on March 9, 2016, when Dr. Camire noted Plaintiff had lumbosacral spine tenderness on palpation. Dr. Camire prescribed Zanaflex, Norco, and gabapentin. On April 6, 2016, Plaintiff saw Dr. Camire for medication refills. Dr. Camire noted lumbosacral spine tenderness on palpation and pain elicited by motion of the left knee; and prescribed Norco, Celexa, and Dulcolax.

Dr. Camire completed a Medical Source Statement Physical ("MSSP") on April 8, 2016. Dr. Camire opined that Plaintiff had the following limitations: he

3

could never lift or carry; he could never twist, stoop, balance, crouch, crawl, or climb; he could only sit for ten minutes at one time and for less than two hours in an eight-hour workday; he could only stand for ten minutes at one time and for less than two hours in an eight-hour workday; he would need to shift positions during the workday; he required the use of a cane; he needed to elevate his legs due to pain in his back; he would be twenty-five percent off task during the workday; and he would have more than four bad days per month.

Plaintiff reported burning in his back to Dr. Camire on May 6, 2016. On June 6, 2016, Dr. Camire assessed Plaintiff with lower back pain, insomnia, idiopathic peripheral autonomic neuropathy. On July 28, 2016, Plaintiff saw Kaywan Gamadia, D.O., at Cape Spine and Neuro who recommended lumbar injection, physical therapy, and pain management.

Plaintiff saw Dr. Camire on August 5, 2016, for follow up and refills of medication. X-ray of Plaintiff's cervical spine revealed severe degenerative disc disease C4-C5 and C5-C6 on October 31, 2016. On November 15, 2016, Dr. Camire reviewed cervical spine MRI results with Plaintiff. MRI of the cervical spine revealed abnormal T2 hyperintense spinal cord signal at the C5-C6 level possible cystic myelomalacia; mild to moderate C3-C4, moderate C4-C5, severe C5-C6, mild to moderate C6-C7, and mild C7-T1 central spinal canal stenosis;

multilevel severe foraminal stenosis; multilevel facet hypertrophy; and trace retrolisthesis of C5 on C6.

On December 8, 2016, Plaintiff saw Marshall Trawick, NP, for weakness and numbness. On December 30, 2016, Plaintiff saw Dr. Camire for medication refills. On January 3, 2017, Beau Ances, MD, saw Plaintiff at Barnes Jewish Hospital. Dr. Ances noted decreased sensation to all modalities below the neck; decreased in anterior-posterior gradient with hyperesthesia along the back which improves at mid-axillac bilaterally; and antalgic gait. On March 23, 2017, Plaintiff saw Dr. Camire who noted tenderness over the base of Plaintiff's neck and the lumbar paraspinal area. On April 17, 2017, Plaintiff saw Dr. Camire who noted irregular gait and assessed chronic pain. Dr. Camire noted, on April 20, 2017, that Plaintiff had pain with motion, tenderness upon palpation, and an irregular gait.

On July 14, 2017, Plaintiff saw Judith Medley, NP, at Iron County Medical Center who noted poor tone in hands; decreased strength in hands; pain and burning of the lower back which radiates to both legs; and slightly limited straight leg raise. On August 2, 2017, Plaintiff presented to Jamesy Smith, D.O., at the Medical Arts Clinic with tenderness in the cervicothoracic region and lumbar spine. On August 18, 2017, Plaintiff saw Adam Bevan, MD, at Barnes Jewish Hospital who diagnosed cervical myelopathy with myelomalacia at C5-C6, radiculopathy involving C6 bilaterally, and L4 radiculopathy.

5

Plaintiff saw Dr. Smith again on September 5, 2017, who noted tenderness in the lumbar and cervical spine and diagnosed spondylosis of the lumbosacral region without myelopathy or radiculopathy. On September 15, 2017, MRI of the lumbar spine revealed moderate degenerative changes of the lumbar spine with facet arthropathy, neuroforaminal stenosis, and spinal canal stenosis. On the same day, Plaintiff saw Bhuyic Patel, MD, for his symptoms of worsening radicular symptoms in the bilateral upper extremities. Dr. Patel noted diminished sensation to light touch primary in the last three digits of his hands, worse on the left.

On June 12, 2018, Plaintiff reported to Barnes Jewish Hospital for fusion of cervical anterior discectomy at the C4-C5 and C5-C6 levels performed by Ian G. Dorward, MD. The surgery was completed without issues. Post-surgery, Plaintiff was moving all extremities well and demonstrated increased finger dexterity.

## Hearing Testimony

On April 3, 2018, Allport appeared and testified at a hearing before ALJ Joseph Heimann. Allport testified that his problems began with a fall on the ice. Allport testified that he had neck pain down into shoulder and both hands. He also reported that he was waiting to have surgery on his neck. As to his lower back, he said that injections and physical therapy were recommended but he had not gotten either. He reported that he could not walk half of a block and could carry ten pounds. Allport testified that he could not do a job requiring him to sit all day

because sitting was difficult. He stated that he spent his day lying in bed, watching TV, and playing video games.

A vocational expert also testified at the hearing and provided vocational interrogatory responses after the hearing.

## Legal Standard

To be eligible for DBI under the Social Security Act, Plaintiff must prove that he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual will be declared disabled "only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). At Step One, the ALJ determines whether the claimant is

currently engaged in substantial gainful activity. At Step Two, the ALJ considers whether the claimant has a "severe" impairment or combination of impairments. At Step Three, the ALJ determines whether the severe impairment(s) meets or medically equals the severity of a listed impairment; if so, the claimant is determined to be disabled, and if not, the ALJ's analysis proceeds to Step Four. At Step Four of the process, the ALJ must assess the claimant's residual functional capacity (RFC) – that is, the most the claimant is able to do despite his physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform any past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process).

The claimant bears the burden through Step Four of the analysis. If he meets this burden and shows that he is unable to perform his past relevant work, the burden shifts to the Commissioner at Step Five to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with his impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v.*

8


*Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 Additionally, the Court must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision; the Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *Id; see also Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).

## **Decision of the ALJ**

At Step One of the of the decision from October 3, 2018, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 14, 2014, his alleged onset date. At Step Two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical spine with radiculopathy; status post cervical fusion; and degenerative disc disease of the lumbar spine. The ALJ found Plaintiff did not have an impairment or combination of impairments listed in or medically equal to one contained in the Listings, 20 C.F.R. part 404,

subpart P, appendix 1, (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

The ALJ determined that plaintiff retained the residual functional capacity to perform sedentary work except he can never climb ladders, ropes, or scaffolds; he is able to occasionally climb ramps and stairs. He can perform all other postural activities occasionally with no limitation on balance, and can frequently handle and finger bilaterally.

At Step Four, the ALJ found that plaintiff is unable to perform his past relevant work as an industrial maintenance repair worker. At Step Five, the ALJ found that there are jobs that exist in significant number in the national economy that Plaintiff could perform, such as a dining room assembler, hand packer and inspector/sorter. Therefore, the ALJ found Plaintiff not disabled.

## Statement of the Issues

Generally, the issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. The issue here is whether the RFC is supported by substantial evidence of record.

## Discussion

A claimant's RFC is the most an individual can do despite the combined effects of all of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010); *see also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p.

Plaintiff asserts that the RFC is not supported by substantial evidence because in formulating the RFC, the ALJ relied on the medical opinion of the non-examining state agency consultant although it was contrary to the opinion of a treating physician and spinal abnormalities shown by objective tests. Plaintiff also asserts that the ALJ's decision to afford no weight to the medical source statement completed by Plaintiff's treating physician, Dr. Camire was error. Plaintiff further argues that the ALJ improperly discounted his subjective reports of pain.

Opinion evidence

Plaintiff argues that the ALJ improperly weighed the medical opinions of treating physician Dr. Camire and non-examining medical consultant Dr. Moore. The ALJ afforded no weight to Dr. Camire's opinion and afforded some weight to Dr. Moore's opinion. Plaintiff argues that Dr. Moore's opinion does not constitute substantial evidence on which to base the RFC and that the ALJ's reliance on the

11

medical opinion of non-examining Dr. Moore given the presence of contrary treating physician's opinion and objective medical evidence was improper.

Dr. Camire opined that Plaintiff's limitations were extreme – he selected the most extreme limitation for each question on the Medical Source Statement Physical. For example, Dr. Camire checked the boxes indicating that Plaintiff could never lift or carry any weight, and never twist, stoop, balance, crouch, crawl, or climb. He also opined that Plaintiff could sit only 10 minutes at a time and for less than 2 hours total per day; he assessed the same limitations on standing. The ALJ afforded Dr. Camire's opinion no weight for three reasons: (1) Dr. Camire assessed the limitations after only three visits with Plaintiff, (2) Dr. Camire's notes do not document subjective complaints or abnormal clinical signs that would support such restrictions, and (3) Dr. Camire used conservative treatments with Plaintiff, which is inconsistent with his opinion.

> An ALJ's failure to consider or discuss a treating physician's opinion that a claimant is disabled is error when the record contains no contradictory medical opinion. *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir.1998). A treating physician's opinion is due "controlling weight" if that opinion is " 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.' " *Prosch,* 201 F.3d at 1012–13 (quoting 20 C.F.R. § 404.1527(d)(2)). Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as whole. *Id.* at 1013. The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent

12

opinions. *Id.*

*Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). Like in *Hogan*, the ALJ here reviewed all of the medical evidence, including Dr. Camire's treatment records, Dr. Camire's Medical Source Statement, Dr. Moore's opinion, and Plaintiff's other treatment records, then expressly discounted the Medical Source Statement. *See Id.* The ALJ noted the absence of subjective complaints or abnormal clinical signs in Dr. Camire's records to support the restrictions opined. Although Plaintiff argues that the ALJ failed to point to inconsistencies in the record, the ALJ specifically pointed to the lack of supporting evidence in Dr. Camire's treatment notes. The ALJ did not err in concluding that the absence of objective findings or subjective reports in Dr. Camire's treatment notes undermines his opinion. The ALJ also properly considered the one-month long treatment relationship between Plaintiff and Dr. Camire when Dr. Camire gave his opinion, the absence in the record of similar restrictions or limitations imposed by any of Plaintiff's other physicians, and Dr. Camire's conservative, medication-only treatment of Plaintiff. 20 C.F.R. §§ 404.1527(c). The ALJ provided "good reasons" for discounting Dr. Camire's opinion. 20 C.F.R. §§ 404.1527(c)(2). Accordingly, the ALJ did not err in affording no weight to Dr. Camire's opinion.

Plaintiff next argues that the ALJ erred in affording more weight to the opinion of the non-examining state agency physician Dr. Moore than to that of Dr.

13

Camire. While it is true that the Court does not consider the opinions of non-examining, consulting physicians standing alone to be "substantial evidence," the RFC can be considered as based on substantial evidence when other evidence in the record as a whole clearly provides substantial support for the ALJ's determination. *See Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004).

Here, the ALJ's decision contains a thorough recounting of Plaintiff's treatment records. These records show several medical practitioner's notes and impressions regarding Plaintiff's condition. Physical exams by Plaintiff's other treating physicians showed normal range of motion of the lumbar spine, normal strength, and normal reflexes. The abnormalities observed in imaging of Plaintiff's lumbar spine are described as mild and moderate. Plaintiff was examined by a neurosurgeon and deemed to not be a candidate for lumbar surgery but was recommended lumbar injections and physical therapy, neither of which Plaintiff pursued.

The ALJ's RFC is based on the record as a whole, not simply the opinion of non-examining Dr. Moore. The ALJ accounted for Plaintiff's spinal abnormalities by including significant limitations in the RFC. Moreover, the ALJ assessed greater limitations than Dr. Moore opined, given the record evidence. Therefore, the ALJ did not err in relying on the opinion of Dr. Moore in formulating the RFC.

<u>Subjective Complaints</u>

Plaintiff also argues that the ALJ erred in assessing Plaintiff's subjective complaints of pain. Specifically, Plaintiff argues that the ALJ did not properly consider the cervical and lumbar spine abnormalities found in imaging tests as supportive of his subjective pain complaints, did not identify Plaintiff's activities of daily living that are inconsistent with disabling limitations due to pain, and erroneously found that limited abnormal objective exam findings and conservative treatment were not inconsistent with disabling pain.

As discussed above, the objective findings regarding Plaintiff's lumbar spine were mild to moderate changes and tenderness on palpation. Surgery was not recommended; physical therapy and lumbar injections, however, were recommended. Although Plaintiff urges that these "more than conservative" treatment recommendations buttress his subjective pain complaints, the Court notes, as did the ALJ, that Plaintiff chose not to pursue physical therapy or lumbar injections for his lumbar pain. *Moore v. Astrue,* 572 F.3d 520, 524-25 (8th Cir. 2009) (appropriate for ALJ to consider conservative or minimal treatment in assessing subjective pain complaints). Plaintiff's testimony that he did not get lumbar injections because he heard they were painful and ineffective and he did not want needles in his back is not consistent with disabling lumbar pain.

Plaintiff's contends that the ALJ did not indicate how Plaintiff's activities of daily living contradict his pain allegations and that the ALJ failed to consider the

15

quality of those activities. However, Plaintiff reported that he does outside 5-6 times a day, does some household repairs and laundry, goes out to eat, goes shopping for an hour or two a week, and took care of bees very well when he had a hive. The ALJ's finding that these activities are inconsistent with disabling pain is not erroneous. *See, e.g. Moore v. Astrue*, 572 at 525 (8th Cir. 2009) (finding that activities such as doing household chores, preparing meals, and going out to eat were inconsistent with disabling pain; *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (finding that activities such as driving, shopping, watching television, and playing cards were inconsistent with the claimant's complaints of disabling pain).

Plaintiff argues that the RFC is unsupported as to his cervical spine issues because the record includes only evidence of the surgery and days immediately following the surgery. However, this evidence indicates that the surgery was successful and resulted in Plaintiff moving all his extremities well and increasing his finger dexterity. This evidence supersedes Plaintiff's pre-surgical cervical spine complaints, many of which related to radicular symptoms in the arms and hands. The ALJ did not err in his consideration of Plaintiff's cervical spine complaints.

## Conclusion

The Court finds that substantial evidence supports the ALJ's decision as a whole. As noted earlier, the ALJ's decision should be affirmed "if it is supported by substantial evidence, which does not require a preponderance of the evidence

but only 'enough that a reasonable person would find it adequate to support the decision,' and the Commissioner applied the correct legal standards." *Turpin v. Colvin*, 750 F.3d 989, 992-993 (8th Cir. 2014) (internal citations omitted). Therefore, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 30th day of November, 2020.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE